UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-138-GWU

JAMES BROCK,                                                        PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Brock v. Barnhart, London Civil Action No.

03-41 (E.D. Ky.) to seek judicial review of an administrative decision to deny

Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB)

originally filed in 1990. (Tr. 45-8, 521).  After several administrative denials and

appeals, and additional SSI applications in 1996 and 2002 (Tr. 189-91, 848-51), and

a period of administrative reconsideration prompted by the undersigned's

Memorandum Opinion, Order and Judgment of March 24, 2004 (Tr. 548-60),

another negative agency decision was issued (Tr. 521-35).  The appeal is again

before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

Brock

1.      Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. <u>See</u> 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

2

Brock

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the

3

Brock

contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long

been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner

may assess allegations of pain.  Consideration should be given to all the plaintiff's

symptoms including pain, and the extent to which signs and findings confirm these

symptoms.   20  C.F.R.  Section  404.1529  (1991).   However,  in  evaluating  a

claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying  medical  condition.   If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain  arising  from  the  condition;  or  (2)  whether  the  objectively
> established  medical  condition  is  of  such  a  severity  that  it  can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another  issue  concerns  the  effect  of  proof  that  an  impairment  may  be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have  regained  his  residual  capacity  for  work  if  he  had  followed  his  doctor's

instructions to do something or if the instructions were merely recommendations.

4

Brock

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

5

Brock

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on

6

Brock

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental contaminants

. . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>,

905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the

Commissioner may still use the rules as a framework for decision-making, 20 C.F.R.

Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record

reveals that the agency relied entirely on the grid.  <u>Ibid</u>.  In such cases, the agency

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.  <u>Varley   v.  Secretary of Health and Human</u>

<u>Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Upon remand, the ALJ obtained additional evidence from psychological and

physical examiners and treating sources, and concluded that the plaintiff had

"severe" impairments consisting of Type 2 diabetes with associated

neuropathy/retinopathy, mild degenerative changes in the cervical spine, slight

spurring in the left shoulder, and a dysthymic disorder.  (Tr. 527).  In response to a

Brock

hypothetical question asking whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of "light" level exertion, required a sit/stand option at 15 to 20 minute intervals, had a "moderately limited" ability to reach above both shoulders, and had a "limited but satisfactory" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, understand, remember, and carry out job instructions, relate predictably in social situations, and demonstrate reliability, a vocational expert (VE) testified that there were certain jobs available to such a person in the state and national economies. (Tr. 1063-64).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The March 24, 2004 remand was prompted by the Court's concern that mental factors were not properly taken into account, specifically in view of the then-uncontradicted restrictions of Dr. Gary Maryman, which included no useful ability to deal with the general public or understand, remember, and carry out complex instructions and a "seriously limited but not precluded" ability to deal with work stresses and understand, remember, and carry out detailed but not complex instructions. (Tr. 315-16, 558-9). Dr. Maryman's testing also showed a fifth-grade reading ability. (Tr. 312).

8

Brock

On remand, additional testing was obtained from Psychologists Reba Moore and Vincent Dummer.

Reba Moore's examination took place in September, 2004, and she also reviewed Dr. Maryman's report. (Tr. 608). She noted a poor recent memory and depressive symptoms, and obtained a verbal IQ score of 69, a fifth-grade reading ability and a sixth-grade arithmetic ability on the Wide Range Achievement Test (WRAT). (Tr. 608-11). Mr. Brock also complained of diabetes and vision problems, and stated that he been told that his vision problems were due to diabetes and glasses would not help him. (Tr. 610). Because of vision problems, performance and full-scale IQ scores could not be calculated. (Id.). Moore diagnosed a moderately severe depressive disorder superimposed on a dysthymic disorder and borderline intellectual functioning. (Tr. 613). Moore concluded that Mr. Brock would have a "seriously limited but not precluded" ability to deal with work stresses, maintain attention and concentration, and understand, remember, and carry out complex job instructions; in all other categories he would be "limited but satisfactory" or better. (Tr. 614-15). She added that he could not function adequately in an object-focused setting or handle changes of routine situations. (Tr. 616).

Dr. Dummer examined the plaintiff in October, 2005, but apparently did not have prior psychological records to review. Mr. Brock reported that he needed glasses but had had laser eye surgery the day before the examination. (Tr. 768-9).

9

Brock

His vision interfered with task completion and only two performance tasks were administered on intelligence testing.  (Tr. 769).  Dr. Dummer obtained a verbal IQ score of 75, and  a "prorated" performance IQ of 79 and prorated full-scale IQ of 75; the WRAT was not administered.  (Tr. 771).  Dr. Dummer found Mr. Brock to have a restricted affect and a somewhat irritable mood, but felt that he related in an appropriate manner, with no signs of anxiety or depression.  (Tr. 769-70).  The psychologist diagnosed an adjustment disorder with a  depressed mood and borderline intellectual functioning, and concluded that Mr. Brock would have no less than a "limited but satisfactory" ability in any area.  (Tr. 773-4).

In view of the fact that all of the sources were one-time examiners, the ALJ could reasonably have relied on the opinion of Dr. Dummer.  Although the plaintiff argues that his borderline intellectual functioning should have been found to be a "severe" impairment, it does not appear that Dr. Dummer imposed any specific restrictions based on this diagnosis beyond what was given in the hypothetical question.[1]

---

[1]The plaintiff points out that Dr. Dummer did not do any WRAT testing, leaving the fifth-grade reading ability as found by Maryman and Moore uncontradicted.  The defendant's regulations recognize that the grade level a claimant completed in school may not represent his actual educational ability, and a numerical grade level will be used only if there is no other evidence to contradict it.  20 C.F.R. Section 416.964(b).  The plaintiff's fifth-grade reading ability places him at the "marginal" level of education rather than the "limited" level implied by his ninth grade education.  (Tr. 1053).  However, the Court's brief review in the Dictionary of Occupational Titles (DOT) of the jobs identified by the VE does not suggest that they would require more than a fifth grade reading level,

Brock

Other issues arise concerning Mr. Brock's physical status.

Although the physical limitations found by the ALJ in the 2002 decision[2] were supported by substantial evidence (Tr. 508-9), newer evidence was submitted after remand. The evidence included additional office notes from Mr. Brock's treating sources at Red Bird Clinic reflecting treatment by Dr. Sharon Fogleman and Nurse Practitioners A. P. Hopkins and Joanne Bracewell between 2001 and 2005 for insulin-dependent diabetes mellitus with peripheral neuropathy, left shoulder pain with subscapular tendonitis/bursitis. (E.g.,Tr. 504-9, 580-8,635-8). Dr. Fogleman completed a Medical Assessment form dated June 3, 2005 limiting Mr. Brock to lifting 20 pounds occasionally and 15 pounds frequently, standing 160 minutes in an eight hour day (no more than 20 minutes without interruption), sitting four hours (no more than 30 minutes without interruption), never climbing or balancing, occasionally stooping, crouching, kneeling, and crawling, having limitations on reaching, feeling, pushing/pulling, seeing, and hearing, and having limitations on working around heights, moving machinery, heat, fumes, humidity and vibration. (Tr. 630-1). When

---

e.g, DOT 559.687-074 Inspector and Hand Packager and 706.684-042 Bench Assembler.

[2] The hypothetical specified lifting one to ten pounds occasionally, standing and walking four hours in an eight hour day (no more than two hours without interruption), occasionally climbing, balancing, stooping, crouching, kneeling, and crawling, limitations on reaching, pushing, pulling, and seeing, with some experiences of blurry vision, and restrictions on working around heights, moving machinery, temperature extremes, and vibration. (Tr. 443-5, 557).

11

Brock

these ALJ gave the lifting, sitting and standing restrictions alone to the VE, he agreed that they would not permit full-time employment. (Tr. 1065).

The ALJ declined to accept Dr. Fogelman's restrictions, stating that they were based on the claimant's statements, that they were unsupported by benign X-ray and MRI reports, and added that Dr. Fogelman's treatment had been "conservative." (Tr. 529). However, the Red Bird sources did make objective findings of diabetic neuropathy on examination, including decreased sensation in the feet, diminished pedal pulses, edema, and loss of hair (Tr. 582-3, 635), and a neurologist who was examining Mr. Brock for his complaints of headaches also found diminished sensation in the feet (Tr. 640). As the plaintiff points out, the Red Bird notes contain several referrals to specialists, including an ophthalmologist, which he was unable to afford (Tr. 573, 579, 586, 635), and this is a questionable reason for discounting credibility. The plaintiff did attend diabetic education classes (Tr. 578), faithfully went to physical therapy for his shoulder problems (Tr. 580-1, 584-7), and had a neurological consultation for headaches arranged by Red Bird (Tr. 639-41).

Moreover, while the ALJ's functional capacity finding is supported by the opinion of a one-time consultative examiner from September, 2004 (Tr. 619-24), this source did not obtain any objective tests and was given only some prior records to review (Tr. 625-6). Therefore, he was not as well-placed to give an assessment as a treating source with a longitudinal history of treatment. The consultant also

12

Brock

suggested that further testing be obtained. (Tr. 622). The state agency physicians who reviewed the record in January and April 2003 did not have the benefit of a review of the entire record, either. (Tr. 943-60).

Under the circumstances, if the treating physician's opinion was to be rejected, the ALJ should at least have obtained the opinion of a medical advisor with access to the entire record.

The decision will be remanded for further consideration.

This the 28th day of February, 2007.

**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**